```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JOSEPH KENDALL,                         :        12 Civ. 6015 (DLC)
                                        :
                     Plaintiff,         :        OPINION AND ORDER
                                        :
          -v-                           :
                                        :
METRO-NORTH COMMUTER RAILROAD,          :
                                        :
                     Defendant.         :
                                        :
----------------------------------------X
```

APPEARANCES

For the Plaintiff:

Ira M. Maurer, Esq.
The Maurer Law Firm, PLLC
300 Westage Business Center Drive, Suite 360
Fishkill, NY 12524


For the Defendant:

José R. Rios
Seth J. Cummins, General Counsel
347 Madison Avenue
New York, NY 10017


DENISE COTE, District Judge:

Joseph Kendall ("Kendall") brings this action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 (2012), alleging that he suffered certain occupational injuries while employed by Metro-North Commuter Railroad ("Metro-North"). Metro-North has moved for summary judgment, based in large part

1

on a <u>Daubert</u> motion to preclude the testimony of Kendall's

expert, Dr. Stephen J. Morrissey ("Dr. Morrisey").  For the

following reasons, the summary judgment motion is denied, and the

<u>Daubert</u> motion is denied without prejudice to renewal as a motion

<u>in limine</u>.


BACKGROUND

        The following facts are undisputed or taken in the light

most favorable to the plaintiff.  Kendall has worked for Metro-

North since 1983.  In this suit, Kendall claims that, during the

course of that approximately 30-year employment, he has suffered

two injuries in his hands –– (1) carpal tunnel syndrome in both

hands and (2) trigger fingers[1] as to most of his fingers –– and

that these injuries were caused, at least in part, by Metro-

North's negligence in failing to provide for a reasonably safe

workplace.

        From 1983 to 2013, Kendall held the following roles at

Metro-North: ironworker, carpenter, ironworker foreman, carpenter

foreman, heavy equipment foreman, and Campbell Hall foreman.  In

all of these roles excluding heavy equipment foreman (a position

Kendall held for only five years), Kendall worked with a variety

---

[1] It appears that "trigger finger" (also known as stenosing
tenosynovitis) is a condition in which, due to inflammation in
the hands, one of the fingers or the thumb gets stuck in a bent
position and then straightens with a snap.

of power tools.  While the full list of these power tools is
extensive, it includes jackhammers, Hilti drills and shooters
(the latter of which are described by Kendall as explosive-
powered nail guns), "helldogs" (which are used to punch rivets
out of holes), gas-powered chop saws for cutting concrete, and
chainsaws.

For the majority of his tenure at Metro-North, Kendall
worked with these power tools every day.  Some of these power
tools, specifically the jackhammers and the Hilti drills, sent
very strong vibrations into Kendall's hands for many hours each
day.  These and other power tools, such nail guns, required
Kendall to continuously grip or squeeze the device.
Additionally, such squeezing was also involved in completing
certain tasks involving other tools, such as using pliers to wire
fences.  Fence installation was a primary task of ironworkers;
Kendall would spend weeks installing a section of fence at a
time.  Most significantly for present purposes, Kendall's hands
were exposed to these vibrations and were engaged in periods of
continuous squeezing even when he held the role of foreman and
not just worker.

On multiple occasions, Kendall requested specific equipment
that he believed would make the work environment safer and his
work less physically demanding.  Specifically, Kendall requested,
in place of the thin cotton gloves Metro-North normally provides,

gloves with a gel coating in the palms, which provides greater insulation when working with power tools that generate significant vibrations, such as jackhammers and helldogs. Kendall made such requests multiple times, but they were all denied.  Other employees at Metro-North received these gel gloves, but Kendall was told that he could not receive them because he was a foreman.

In 2010, Kendall first saw a doctor for the pain in his hands: Dr. Alan Gotesman ("Dr. Gotesman"), a hand specialist. The initial appointment occurred on August 26, 2010.  Through this and subsequent appointments, Dr. Gotesman diagnosed Kendall as having carpal tunnel syndrome and trigger fingers. Furthermore, after Kendall explained his job duties to Dr. Gotesman, Dr. Gotesman specifically stated that he believed that Kendall's job duties caused, or at least contributed, to these injuries.  Dr. Gotesman identified specifically the repetitive motion from his job duties, as well as the pounding vibrations from power tools such as jackhammers and helldogs, and the constant gripping and squeezing motion of other tools.  To date, Kendall has undergone multiple surgeries and other medical procedures to address his injuries.

Kendall commenced this FELA action on August 6, 2012.  The case was reassigned to this Court on December 12.  Following an initial conference, a January 18, 2013 Pretrial Scheduling Order

set a schedule for both fact and expert discovery.  Following

discovery, on December 20, 2013, Metro-North moved for summary

judgment.  The motion was fully submitted as of February 21,

2014.

DISCUSSION

     Summary judgment may not be granted unless all of the

submissions taken together "show[] that there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving

party bears the burden of demonstrating the absence of a material

factual question, and in making this determination, the court

must view all facts in the light most favorable to the non-moving

party.  Eastman Kodak Co. v. Image Technical Servs., Inc., 504

U.S. 451, 456 (1992); Holcomb v. Iona Coll., 521 F.3d 130, 132

(2d Cir. 2008).

     Once the moving party has asserted facts showing that the

non-movant's claims cannot be sustained, the opposing party must

"set out specific facts showing a genuine issue for trial," and

cannot "rely merely on allegations or denials" contained in the

pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554

F.3d 255, 266 (2d Cir.2009).  Nor may a party "rely on mere

speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment," as "[m]ere conclusory

allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir.2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The ordinary summary judgment standard is considerably more plaintiff-friendly in FELA cases. Because FELA is "a broad remedial statute whose objective is to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer" and "is to be liberally construed" to achieve that objective, Greene v. Long Island R.R., 280 F.3d 224, 229 (2d Cir. 2002) (citing Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561–62 (1987)), "the right of the jury to pass on factual issues must be liberally construed." Williams v. Long Island R.R., 196 F.3d 402, 407 (2d Cir. 1999) (citation omitted). Accordingly, a FELA case "must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." Syverson v. Consol. Rail Corp., 19 F.3d 824, 828 (2d Cir. 1994) (emphasis added).

Metro-North asserts that it is entitled to summary judgment based on two arguments: (1) Kendall's claim is barred by the

three-year statute of limitations under FELA; and (2) the

testimony of Kendall's expert, Dr. Morrisey, does not meet the

standards required by Federal Rule of Evidence 702, as explained

in Daubert v. Merrell Dow Pharma., 509 U.S. 579 (1993), and as a

consequence Kendall cannot prove causation or negligence.  Each

argument is addressed in turn.


I. Statute of Limitations

     Metro-North first contends that Kendall's claim is time-

barred.  FELA provides that "[n]o action shall be maintained

under this act . . . unless commenced within three years from the

day the cause of action accrued."  45 U.S.C. § 56.  With respect

to "gradual injuries," a discovery rule applies, wherein the

"FELA action accrues when the plaintiff in the exercise of

reasonable diligence knows both the existence and the cause of

his injury."  Mix v. Delaware & Hudson Ry. Co., 345 F.3d 82, 86

(2d Cir. 2003) (citation omitted).

     In Mix, the Second Circuit determined that the application

of this discovery rule in the context of some gradual injury

cases may lead to an "inequitable" result and "undermine the

spirit of the FELA."  Id. at 88.  As a result, the Second Circuit

has provided that, even if the plaintiff's claim would ordinarily

have been barred by the FELA discovery rule, the plaintiff can

nevertheless recover for (1) "injuries suffered during the three-

year period preceding the suit, if these injuries are sufficiently distinct from those previously suffered," id. at 90, and (2) "aggravation to existing injuries, provided that the aggravation was caused by a distinct act of negligence whose existence and relationship to the injury was unknown prior to the three-year period preceding the suit." Id.

In setting forth a "bright-line rule" for what constitutes a distinct injury, the Second Circuit relied on a Sixth Circuit case, Fonseca v. Consolidated Rail Corp., 246 F.3d 585, 590-91 (6th Cir. 2001), in which a plaintiff alleged that he suffered "temporary pain" in his hands for twenty-seven years but that the pain only became "permanent" within the three-year period preceding the suit. Mix, 345 F.3d at 90. Citing Fonseca, the Second Circuit held that "a plaintiff may maintain a claim for 'accumulation' if he proffers evidence suggesting that his initial symptoms were temporary in nature, and based upon their accumulation, became permanent injuries only during the three-year period preceding his suit." Id. at 90-91.

This action was filed on August 6, 2012. Accordingly, the statute of limitations question here is whether Kendall's claim accrued before August 6, 2009.

Metro-North has not met its burden of demonstrating that Kendall's FELA claim is time-barred as a matter of law. Kendall has raised a genuine issue of material fact as to whether his

claim accrued after August 6, 2009.  Kendall repeatedly stated in his deposition that he did not experience any severe symptoms in his hands until 2010, and that his non-severe symptoms began approximately one year before August 26, 2010, the date of his initial appointment with Dr. Gotesman.  It was after this appointment that Kendall learned of his diagnosis and the cause of his injuries.  Drawing all inferences in Kendall's favor, this is sufficient to raise a genuine question of material fact as to whether Kendall knew or should have known of his injury and its cause as of August 6, 2009.

Metro-North points to evidence that suggests that Kendall experienced symptoms of hand pain for approximately four years before August 6, 2009.  It argues that Kendall had a corresponding duty to investigate the cause of his injury upon manifestation of these symptoms.  Metro-North's argument, however, merely demonstrates the existence of inconsistencies in the record evidence.  These inconsistencies raise a genuine question of material fact and require resolution by a jury.

## II. Causation and Negligence

Metro-North's summary judgment motion operates on the following premise: that, if Metro-North were to prevail on its Daubert challenge to Dr. Morrisey, Kendall could not demonstrate either causation or negligence, which are both required elements

of a FELA claim.  Tufariello v. Long Island R. Co., 458 F.3d 80, 87 (2d Cir. 2006) ("In FELA actions, the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.").

This premise is incorrect.  Because FELA is a broad remedial statute, a relaxed standard for negligence and causation applies to cases brought pursuant to FELA, as explained below.  Under this relaxed standard, Kendall has raised a genuine question of material fact as to both causation and negligence, even without the expert report of Dr. Morrisey.  Accordingly, it is not necessary to reach the Daubert challenge to Dr. Morrisey's expert report in resolving the present motion.

(1) Causation under FELA

The Supreme Court recently reiterated that FELA's language on causation "is as broad as could be framed." CSX Transp., Inc. v. McBride, 131 S. Ct. 2630, 2636 (2011) (citing Urie v. Thompson, 337 U.S. 163, 181 (1949)).  FELA reads, in relevant part, as follows:

> Every common carrier by railroad . . . shall be liable
> in damages to any person suffering injury while he is
> employed by such carrier . . . for such injury or death
> resulting in whole or in part from the negligence of
> any of the officers, agents, or employees of such
> carrier, or by reason of any defect or insufficiency,
> due to its negligence, in its cars, engines,
> appliances, machinery, track, roadbed, works, boats,
> wharves, or other equipment.

45 U.S.C. § 51 (emphasis added).  "Given the breadth of the
phrase 'resulting in whole or in part from the [railroad's]
negligence,' and Congress' humanitarian and remedial goals, . . .
in comparison to tort litigation at common law, a relaxed
standard of causation applies under FELA."  CSX, 131 S. Ct. at
2636 (citation omitted).

In CSX, the Supreme Court reaffirmed the seminal test for
causation in FELA cases, set forth in Rogers v. Missouri Pac. R.
Co., 352 U.S. 500 (1957):  "Under FELA the test of a jury case is
simply whether the proofs justify with reason the conclusion that
employer negligence played any part, even the slightest, in
producing the injury or death for which damages are sought."
CSX, 131 S. Ct. at 2636 (citing Rogers, 352 U.S. at 506)
(emphasis added).  Furthermore, the Supreme Court clarified that
this test displaces common law standards of proximate causation.
Id. at 2639; see also id. at 2641 ("While some courts have said
that Rogers eliminated the concept of proximate cause in FELA
cases, we think it more accurate to recognize that Rogers
describes the test for proximate causation applicable in FELA
suits." (citation omitted)).  Thus, the Supreme Court affirmed a
jury instruction that stated that "a defendant railroad caused or
contributed to a railroad worker's injury if the railroad's
negligence played a part -- no matter how small -- in bringing

11

about the injury."  Id. at 2644 (citation omitted).

Furthermore, and consistent with the plaintiff-friendly causation test in FELA cases, a plaintiff need not present much evidence to prove causation:

> [F]or practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit.  The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.

Rogers, 352 U.S. at 508 (1957) (emphasis added).  As clarified by the Second Circuit, in the ordinary FELA case, "[c]ircumstantial evidence, expert testimony, or common knowledge may provide a basis from which the causal sequence may be inferred."  Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 60 (2d Cir. 1996) (emphasis added) (citation omitted); accord Williams, 196 F.3d at 407 ("[U]nder FELA the jury's power to draw inferences is greater than in common-law actions." (citation omitted)).

There are cases, however, where "special expertise is necessary to draw a causal inference."  Ulfik, 77 F.3d at 59 (citation omitted).  Thus, in a toxic tort case, in which a plaintiff claimed that his cancer was the product of exposure to toxins emitted from defendants' vessels, the Second Circuit held that expert testimony was required to establish causation.  Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004).  Where,

12

however, "there is a generally understood causal connection between physical phenomena . . . and the alleged injury that would be obvious to laymen," no expert testimony is required. Tufariello, 458 F.3d at 88 (citation omitted).

Summary judgment is not warranted on the basis that Kendall cannot prove causation, for at least two reasons. First, although the issue was not raised by either party, it appears that no expert testimony is required to prove causation in this case. While the details of carpal tunnel syndrome and trigger finger are not common knowledge, the causal relationship between (a) repeated exposure to vibrations in one's hands and continuous gripping and squeezing by the hands and (b) chronic injuries to one's hands is generally understood and would be obvious to laymen. In Tufariello, even though the plaintiff's medical condition was "severe sensorial impairment bilaterally," the Court of Appeals described the causal relationship in more general terms, stating that the "causal link" between "hearing loss" and "repeated exposure" to very loud noise was "widely known." Id.

Kendall has submitted sufficient testimony to raise a question of material fact as to causation. Kendall has testified to his job duties during his employment at Metro-North, including how his hands were exposed to heavy vibrations from certain power tools and that he gripped or squeezed these and other tools for

13

extended periods of time.  This is sufficient evidence from which a jury could find that Metro-North caused, at least in part, Kendall's hand-related injuries.

Second, even if expert testimony were required to establish causation in this case, it would be adequately established by the admissible evidence contained in the affidavit submitted by Kendall's treating physician, Dr. Gotesman.  Dr. Gotesman is a board-certified orthopedic surgeon with extensive experience in non-operative and surgical treatment of trigger finger and carpal tunnel syndrome.  In his affidavit, Dr. Gotesman sets forth his opinion that Kendall's injuries were caused, at least in part, by his job duties, work environment, and his exposure to and use of tools and power equipment on a daily basis over several decades working at Metro-North.

Metro-North's sole challenge to Dr. Gotesman's testimony is to dispute its admissibility for not having been disclosed properly under Rule 26, Fed.R.Civ.P.  Kendall was required to disclose expert testimony conforming to the requirement of Rule 26(a)(2)(B) by May 31, 2013.  Kendall has never served an expert report from Dr. Gotesman.  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (citation omitted).

Rule 26(a)(2) concerns the disclosure of expert testimony.

14

For all expert testimony, "a party must disclose to the other parties the identity of any witness it may use at trial." Fed.R.Civ.P. 26(a)(2)(A).  If "the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," a formal and detailed written report is required.  Fed.R.Civ.P. 26(a)(2)(B).  For a non-retained expert witness, a far more limited disclosure is required.  The disclosure need only "state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C).  "A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report."  Advisory Committee Note based on 1993 Amendments to Rule 26, Fed.R.Civ.P.

Failure to comply with these disclosure rules, however, does not dictate automatic preclusion under Rule 37(c).  A court need not preclude evidence if the failure to disclose "was substantially justified or . . . harmless" and may choose to order another sanction in addition to or instead of preclusion of the previously undisclosed evidence.  Fed.R.Civ.P. 37(c).  In deciding whether to preclude evidence not previously disclosed a court may consider

15

>        (1) the party's explanation for the failure to comply
>        with the disclosure requirement; (2) the importance of
>        the testimony of the precluded witness[]; (3) the
>        prejudice suffered by the opposing party as a result of
>        having to prepare to meet the new testimony; and (4)
>        the possibility of a continuance.

Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006)

(citation omitted).

Dr. Gotesman offers testimony regarding Kendall's injuries

and the cause of those injuries as his treating physician, and

additional testimony that would ordinarily be presented through a

retained expert.  The expert testimony beyond that which may be

properly given by a treating physician is inadmissible because it

was not properly disclosed as required by Rule 26(a)(2)(B),

Fed.R.Civ.P., and this Court's scheduling order.  Metro-North has

not had an opportunity to rebut the "retained expert" opinions of

Dr. Gotesman through its own rebuttal expert.  Moreover, the

factors set forth in Design Strategy, 469 F.3d at 296, call for

preclusion here; Kendall has failed to persuasively explain why

he failed to make such a disclosure, and -- as the remaining

discussion demonstrates -- he does not require these portions of

Dr. Gotesman's testimony to prevail in opposing the present

motion.

The portion of Dr. Gotesman's affidavit that reflects his

opinions as a treating physician was adequately disclosed under

Rule 26(a)(2)(C), Fed.R.Civ.P., because Dr. Gotesman was

16

identified as a witness in multiple disclosures.  Moreover, that admissible testimony is sufficient to raise a genuine question of material fact as to causation.

(2) Negligence

Metro-North also moves for summary judgment on the ground that Kendall has failed to raise a genuine question of material fact as to negligence.  In this Circuit, "under FELA, an employer has a duty to provide its employees with a safe workplace, which it has breached if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees."  Tufariello, 458 F.3d at 87 (citation omitted).  "The touchstone of this negligence inquiry is the issue of foreseeability -- whether or not Metro-North knew or should have known of the potential hazard."  Ulfik, 77 F.3d at 58 (citing Gallick, 372 U.S. at 117).

As with causation, "a relaxed standard of negligence applies in FELA cases in this Circuit."  Williams, 196 F.3d at 406; see also Tufariello, 458 F.3d at 87.  Accordingly, "the quantum of evidence that suffices in FELA cases is significantly lower than in ordinary torts cases," Nelson v. Metro-N. Commuter R.R., 235 F.3d 101, 106 (2d Cir. 2000), and "an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law."  Tufariello, 458 F.3d at 87

17

(citation omitted).  Ultimately, "the right of the jury to pass upon the question of fault and causality must be most liberally viewed."  Williams, 196 F.3d at 406 (citation omitted); accord Sinclair v. Long Island R.R., 985 F.2d 74, 76-77 (2d Cir. 1993) (noting the "strong federal policy in favor of letting juries decide these cases" in discussing the negligence standard (citation omitted)).  Specifically, the Second Circuit has held that, when an employee asserts that he "specifically asked his superiors for [a] protection but was denied," that assertion is sufficient to raise a genuine question of material fact as to negligence.  Tufariello, 458 F.3d at 91.

Metro-North has failed to carry its burden in seeking summary judgment on the ground of negligence.  Kendall testified that he made multiple requests for anti-vibration gel gloves, but the gloves were all denied to him (and not others) on the ground that he was a foreman -- even though he was exposed to vibrations and required to grip-and-squeeze as any other worker.  Viewing the facts in Kendall's favor, Kendall's case is one where he specifically requested protections and was denied, thus falling squarely within the circumstances discussed in Tufariello as raising a genuine question of material fact as to negligence. See 458 F.3d at 91.

Metro-North responds that it could not foresee that Kendall's various tasks could lead to the development of his

18

conditions.  To the contrary, Kendall has specifically asserted that, through his requests for protective equipment, Metro-North knew, or should have known, of the possibility of harm from his work conditions.  This dispute must now be resolved by a jury.

Metro-North further objects that Kendall has failed to point to any analogous complaints by fellow employees in his craft. There is no requirement, however, of complaints by multiple employees to state a claim of negligence.  Indeed, Tufariello suggests that a complaint by a single employee is sufficient to defeat summary judgment.

In sum, Kendall has raised a genuine question of material fact as to both causation and negligence, even without relying on the contested expert report of Dr. Morrisey.  Accordingly, Metro-North's summary judgment motion is denied.  The Daubert motion to Dr. Morrisey's expert report is denied without prejudice to renewal as a motion in limine.

CONCLUSION

Defendant's November 15, 2013 motion for summary judgment is denied.  Defendant's November 15, 2013 motion to preclude the testimony of Dr. Stephen J. Morrissey is denied without prejudice to renewal as a motion in limine.


        SO ORDERED:

Dated:    New York, New York
          May 12, 2014


                                   _____
                                           DENISE COTE
                                   United States District Judge